Filed 8/27/15  P. v. Higueros CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B254813 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA058779) |
| v. | |
| ELDER R. HIGUEROS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Bernie C. LaForteza, Judge.  Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Elder Higueros of gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a).)[1] The trial court sentenced Higueros to serve the upper term of 10 years in state prison.

Higueros appeals contending the trial court abused its discretion by (1) excluding parts of his interview as evidence, and (2) selecting the upper term of 10 years. He further contends trial counsel rendered ineffective assistance by not objecting to the use of aggravating facts at the sentencing hearing. We affirm.

## FACTS

On February 16, 2013, Higueros crashed his car killing Joseph Contreraz, Jr., a passenger. Accident investigation by the California Highway Patrol (CHP) estimated the speed at the time of crash at approximately 91.5 to 117.9 miles per hour. Higueros lost control of his car after driving into a dirt center median on the 14 Freeway. His blood-alcohol content was 0.154 about two and one-half hours after the crash (breathalizer test[2] at the hospital) and 0.14 about three hours after the crash (blood test).

In June 2013, the People charged Higueros with murder (count 1; § 187, subd. (a)) and gross vehicular manslaughter while intoxicated (count 2; § 191.5, subd. (a)). Jury trial began in late September 2013.

At trial, a criminalist called by the prosecution opined Higueros's blood-alcohol content at the time of the crash was around 0.20. Multiple empty beer cans were recovered at the scene of the crash. Higueros testified. He denied drinking any of the empty beer cans found at the crash site. Instead, he claimed the beer belonged to Contreraz and that only Contreraz drank in the car.

The trial court instructed the jury on the two offenses. On count 2, the jury was also instructed on the lesser offense of vehicular manslaughter while intoxicated with ordinary negligence. On October 4, 2013, the jury returned verdicts finding Higueros not

---

[1]    All further undesignated section references are to the Penal Code.

[2]    Discussed in the record as a preliminary alcohol screening or PAS test.

2

guilty of murder in count 1 and guilty of gross vehicular manslaughter while intoxicated in count 2.

## DISCUSSION

### I. Claim of Error Excluding Statements

Higueros contends his manslaughter conviction must be reversed because the trial court excluded evidence of certain statements that he made during a police interview. In other words, Higueros contends the trial court prejudicially erred in redacting parts of his interview before it was presented to the jury. We disagree.

#### *Relevant Rule*

Evidence Code section 356 provides:

"Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; . . . and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

When one party seeks to admit a part of a statement the opposing party may admit any other part necessary to place the original statement in its proper context. (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1174.) The purpose of Evidence Code section 356 is to correct misleading impressions. (*People v. Arias* (1996) 13 Cal.4th 92, 156.)

A trial court's ruling under Evidence Code section 356 is reviewed for abuse of discretion. (*People v. Pride* (1992) 3 Cal.4th 195, 235; *People v. Parrish* (2007) 152 Cal.App.4th 263, 274.) A reviewing court is to uphold the exclusion of evidence unless it finds the trial court acted "arbitrarily, capriciously, or [in a] patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) The complaining party bears the burden of establishing an abuse of discretion. (*Estate of Hart* (1953) 119 Cal.App.2d 310, 318.)

3

## A. Relevant Proceedings

The prosecutor moved to admit three short clips from a 48-minute police interview. In its written motion in limine, the prosecutor explained the statements were relevant to show:

> (1) the background information (whether defendant had any medical issues or his car had mechanical problems; where he was coming from and going to; who was driving; and what he had drank earlier in the day), and (2) defendant's pre-existing knowledge about the dangers of DUI.

Citing Evidence Code section 356 defense counsel argued Higueros's statement of surprise at the result of the preliminary alcohol screening test ("that reading can't be right") and his explanation for a potential false reading (he was drinking wine with his girlfriend the previous night) should also be admitted. The prosecutor objected arguing, inter alia, that Evidence Code section 356 was inapplicable. The prosecutor summed up the People's objection as follows: "He's trying [to introduce evidence] to excuse the result[s of the blood alcohol tests]." The trial court ruled in favor of the prosecution finding Evidence Code section 356 inapplicable. The trial court also relied on Evidence Code section 352, finding the danger of prejudice substantially outweighed the excluded statements' probative value. Subsequently, defense counsel moved for reconsideration. After hearing from the parties, the trial court stood on its prior ruling. During the trial, a short audio clip corresponding to each of the identified areas, including alcoholic beverages consumed just prior to driving, was played for the jury.

## B. Analysis

### 1. *No Abuse of Discretion*

The statements offered by the prosecution generally served two purposes. First, they tended to explain drinking activity just prior to driving the vehicle. Second, they shed light on subjective mental state relevant to implied malice. Viewed from this perspective, the excluded statements were not relevant to the admitted statements. The statement of surprise concerning the result of the PAS test and the explanation for

4

the potential false reading were freestanding subject matters unrelated to the admitted statements. Thus, the trial court's ruling was not arbitrary, capricious or patently absurd.

At the motion to reconsider, Higueros argued that if he later testified, the earlier exclusion order would mislead the jury into thinking he failed to be forthcoming at the police interview. This misses the mark. The rationale underpinning Evidence Code section 356 looks at the interplay between the opposing parties and a particular undivided statement. If one party offers in evidence a part of a statement (or an act, declaration, conversation or writing) leaving the whole incomplete, the opposing party may invoke the rule of completeness to finish the whole to cure the misconception. The question to be answered by the trial court is whether truncating a statement into parts and keeping some from the trier of fact would be misleading, not whether a freestanding statement otherwise inadmissible should be admitted to cure a perceived misconception. Other provisions of law, such as prior consistent statement of a witness under Evidence Code section 791, might remedy such a problem. Higueros cites *People v. Zapien* (1993) 4 Cal.4th 929 in support of his position. The case is inapposite. The facts in *Zapien,* like other cases on the rule of completeness, looked at prior testimony as a whole and considered whether the rule of completeness was properly applied when the trial court admitted other portions of that prior testimony. Higueros has failed to establish an abuse of discretion.

### 2. *No Prejudice*

A claim of error in excluding evidence is reviewed for prejudice. (*People v. Alexander* (2010) 49 Cal.4th 846, 909.) Assuming the trial court erred, we find no probability of prejudice.

Higueros testified and placed before the jury evidence regarding his drinking activity with his girlfriend the night before the crash. The jury ultimately considered a version of the excluded evidence. Higueros explained his conduct at his girlfriend's apartment the night before. Nevertheless, this testimony failed to persuade the jury he was only culpable of ordinary negligence. As such, it is not reasonably probable that the jury would have reached a different result had it learned of the excluded statements

5

during Officer Lewis's testimony.  The timing and mode for the admission of this evidence did not significantly alter the impact of the evidence as a whole.

Further, the evidence of guilt on gross vehicular manslaughter while intoxicated was overwhelming.  That Higueros consumed beer at the barbeque was not disputed.  Less than two hours before the collision, Miguel Molina, a friend who spoke with Higueros, said he sounded "a little slurry."  Two percipient witnesses who saw the accident testified it appeared Higueros intentionally drove into the center dirt median at almost 100 miles per hour in an attempt to pass the freeway traffic.  At the crash site, a CHP officer noticed Higueros smelled of alcohol, slurred his speech, exhibited bloodshot eyes, and showed difficulty completing his sentences.  A 18-pack box of beer inside the vehicle tied with consumed beer cans at the crash site inferred Higueros drank while he drove.  His blood-alcohol content at the time of the accident was 0.20, more than twice the legal limit.  Based on the totality of this evidence, the jury understandably rejected Higueros's explanation he accidentally drove into the center median because of a cell phone distraction and that only the decedent drank in the car.  We see no reasonable likelihood of a more favorable result had the excluded statements been admitted in the prosecution's case in chief.

## II.      Claim of Error Imposing the Upper Term

Higueros contends his sentence must be vacated and his case remanded for a new sentencing hearing because the trial court erred in selecting the upper term.  We disagree.

### A.      *Relevant Rules*

A trial court's sentencing decision is reviewed for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).)  In response to *Cunningham v. California* (2007) 549 U.S. 270, California's Legislature eliminated the presumptive middle term and authorized trial courts to choose any of the terms so long as a reason is given for its choice.

Section 1170 (b) as amended in 2007 states in pertinent part as follows: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . ." (See § 1170(b).)

Under the new scheme, trial courts are no longer required to weigh and make ultimate findings of aggravating and mitigating factors. (*Sandoval*, *supra*, 41 Cal.4th at p. 847.)

### B.    *Relevant Proceedings*

The probation officer's report listed two circumstances in aggravation: (1) the crime involved great violence disclosing a high degree of cruelty, viciousness, and callousness; and (2) the manner in which the crime was carried out indicated planning, sophistication, and professionalism. The report cited lack of criminal record as a single factor in mitigation. The report recommended the high term.

The prosecutor filed a sentencing memorandum arguing for the upper term of 10 years based on the egregious nature of Higueros conduct and his failure to accept responsibility.

Higueros filed a written statement expressing regret for his actions that resulted in the death of his best friend. Further, he filed a sentencing memorandum arguing for probation based on lack of a criminal record and remorsefulness. The sentencing memorandum included four character letters from friends and co-workers.

7

At the sentencing hearing, the prosecutor presented statements from the victim's family members and reiterated the People's position for the upper term. Defense counsel argued the aggravating factors listed in the probation report were unfounded. Regarding the aggravating factor that the offense involved professionalism, sophistication, and planning, counsel argued it was "ludicrous on its face." On high degree of risk of bodily harm, counsel acknowledged the "gross negligence here rests on speed, the manner in which the car is driven." However, he argued, the testimony of the two percipient witnesses who saw the crash was not competent evidence. Counsel emphasized Higueros's complete lack of criminal record.

After considering the arguments from both sides, the trial court struck the aggravating circumstance that the offense involved sophistication and professionalism. The court indicated it had read and considered the probation report, the People's sentencing memorandum, the defendant's sentencing memorandum, the defendant's written statement, all letters submitted on his behalf, the facts adduced at trial, and the arguments of the attorneys. The court made the following statements in imposing sentence:

"[T]he court has considered and finds the following aggravating facts relating to the crime as set out in [California Rules of Court,] rule 4.421(a), subdivision (3): the victim, compared to victims of similar crimes, was particularly vulnerable because he was merely a passenger driven by [Higueros], who was intoxicated and drove with reckless abandon.

"In addition, the court has also considered other circumstances in aggravation as permitted in rule 4.408: the fact that he drove in such a reckless and dangerous manner; in this case, speeds up to 108 miles per hour, passing slower traffic on the left shoulder.

"In considering probation, the court has considered facts relating to the crime under California Rule of Court 4.414(a), the nature, seriousness, and circumstances of the crime as compared to other instances of the same crime. And I find it to be more serious, because in this case [Higueros]'s reckless driving to such a degree was so reckless that it resulted in the killing of Joseph Contrera[z].

8

"Also the court has considered objectives of sentencing pursuant to rule 4.410 and Penal Code section 1202.7. The court has considered the general objectives of sentencing and the primary considerations in granting probation. These include protecting society, punishment, deterrence, crime prevention, restitution, uniformity in sentencing, and reintegration of [Higueros] into society.

"In this matter, by the egregious conduct by [Higueros] while he was driving while intoxicated and driving with such gross abandonment, the court does find that society must be protected [from] this type of conduct. Also, [Higueros] should be similarly punished for that type of behavior."

The court denied probation and sentenced Higueros to the upper term of 10 years in state prison.

### C.    *Forfeiture Doctrine*

In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), our Supreme Court held "complaints about the manner in which the trial court exercises it sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id*. at p. 356.)

*Scott* noted, "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Scott, supra,* at p. 353.)

The People argue Higueros forfeited any challenge because he failed to object to the court's findings below. We agree.

Review of the record shows defense counsel objected to the aggravating factors recommended by probation. However, defense counsel made no specific objections to the court's own set of aggravating circumstances that was used to impose the upper term (1) victim was particularly vulnerable, (2) aggravated speed, (3) crime was more serious

9

when compared to other instances of the same crime, and (4) protecting society. He did not argue the trial court's reasons for imposing the upper term on these circumstances were improperly considered. As such, Higueros forfeited this claim and did not preserve it for review.

### D. Analysis

Assuming the claim of sentencing error was not forfeited, the trial court did not abuse its discretion. "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. [Citations.] The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'" (*Sandoval, supra,* 41 Cal.4th at p. 848.)

The trial court's analysis for imposing the upper term focused on the offense, the offender and public interest. The circumstances considered were reasonably related to the facts and circumstances of the case. Among other aggravating circumstances, the court found the descendent "a particularly vulnerable victim." Challenging evidentiary support that the decedent was "a particularly vulnerable victim," Higueros claims the decedent may have been equally intoxicated and thus was "an initiator of, willing participation, or aggressor or provoker of, the incident."

We reject this argument. There is no evidence, either direct or circumstantial, that the decedent encouraged Higueros to drive at speeds of up to 100 miles per hour into the dirt median of a highway. As the driver, Higueros exercised sole control over safety. This finding was clearly supported by the evidence adduced in the trial.

We likewise reject the argument the trial court "ignored" his lack of prior criminality as a mitigating circumstance. While it is true, the trial court did not place great emphasis on this factor, given the crime's tragic and egregious nature, minimizing the lack of criminality was not arbitrary and capricious. The trial court did not abuse its discretion in imposing the upper term.

10

## III.  Ineffective Assistance of Counsel

Taking a different path to the same end result of a vacated sentence and a new sentencing hearing, Higueros contends that his trial counsel's failure to object to the aggravating facts that the trial court used in imposing the 10-year upper term warrants relief under the law of ineffective assistance of counsel.  We disagree.

### A.  *Relevant Rule*

To obtain relief for ineffective assistance of counsel, a defendant must establish (1) that his or her counsel's performance was so deficient that it amounted to a failure to function as the "counsel" guaranteed by the Sixth Amendment and (2) that the deficiency prejudiced the outcome.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); and see, e.g., *People v. Pensinger* (1991) 52 Cal.3d 1210, 1252.) An attorney's performance is deficient under *Strickland* when his or her conduct falls below objective standards of reasonableness under prevailing professional norms. (*Strickland*, *supra*, 466 U.S. at p. 688.)  Prejudice under *Strickland* is established where there is a reasonable probability that, absent counsel's alleged errors, the outcome of the proceeding would have been different.  (*Id.* at p. 694.)  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  (*Ibid.*)

### B.  *Analysis*

#### 1. *Objective Reasonableness*

Higueros has failed to establish his trial counsel's performance at sentencing fell below an objective standard of reasonableness.  (*Strickland*, *supra*, 466 U.S. at p. 687.) The record shows defense counsel filed a well-presented sentencing memorandum challenging the probation officer's report, specifically its finding of two aggravating factors.  During the sentencing hearing, the trial court engaged both counsel and conducted a thorough hearing.  In his bid for probation, defense counsel convinced the trial court to strike one of the probation officer's recommended aggravating factors. The trial court came up with its own set of aggravating circumstances.  Having convinced the trial court to strike an aggravating factor recommended by probation, defense counsel might well have thought objecting to the court's own would be futile.  Counsel are not

11

required to make futile objections.  (*People v. Diaz* (1992) 3 Cal.4th 495, 562.)  Defense counsel's actions show professional awareness and diligence.

2. *No Prejudice*

Assuming defense counsel's failure to object was ineffective, Higueros cannot show the trial court abused its discretion in selecting the upper term as shown in section II(D) of this opinion.  The trial court properly exercised the scope of its wide discretion in choosing the upper term.  Thus, Higueros cannot demonstrate he was prejudiced by his counsel's failure to object because we see no reasonable probability doing so would have yielded a more favorable result.  (*Strickland, supra,* 466 U.S. at p. 694.)

**DISPOSITION**

The judgment is affirmed.

OHTA, J.[*]

We concur:

BIGELOW, P.J.

FLIER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.